J.M. v Rozanov (2024 NY Slip Op 24132)

[*1]

J.M. v Rozanov

2024 NY Slip Op 24132

Decided on April 19, 2024

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 19, 2024
Supreme Court, Bronx County

J.M., Plaintiff(s),

against
Victor Rozanov, Defendant(s).

Index No. 811336/22E

Fidel E. Gomez, J.

In this action for, inter alia, intentional infliction of emotional distress, after an inquest, this Court awards plaintiff the damages discussed hereinafter.
According to the complaint, the instant action is for violations of New York City Administrative Code § 10-180, Civil Rights Law § 50-b, and intentional infliction of emotional distress. Plaintiff and defendant were involved in a romantic relationship after meeting each other while freshmen at Seton Hall University. During the course of their relationship, the parties took pictures and videos of plaintiff engaging in sexual acts. It was agreed that the foregoing videos and pictures would remain between them and deleted after the parties watched them. On May 27, 2017, however, defendant uploaded a one minute and fifteen second video of plaintiff performing fellatio to Youporn.com. The video, which showed plaintiff's face and bore her full name, was then transferred to CamWhores.com. Plaintiff learned about the publication of the foregoing video when she began to receive harassing messages from strangers, who tracked her down using social media. Plaintiff contacted defendant, who directed her to his attorney. On August 7, 2017, after plaintiff contacted the police, the video, which remained online for nearly three months and had been viewed over 5,000 times, was removed. Plaintiff then discovered that on November 3, 2015, defendant posted intimate and non-intimate photographs of her on CumOnPrintedPics.com. Along with the images, defendant posted sexually explicit messages on the foregoing site, including plaintiff's first name. Defendant also posted claims that others had sent him photos containing sexually explicit descriptions of sexual acts being performed using plaintiff's photographs. Based on the foregoing, plaintiff reported defendant's conduct to Seton Hall University, which in the fall of 2017 conducted a hearing at which defendant admitted to the conduct alleged by plaintiff. Thereafter, plaintiff sued defendant in New Jersey for the nonconsensual dissemination of the first video posted by defendant. In 2022, plaintiff learned that on March 22, 2017, defendant created a second post on the aforementioned forum, where he posted intimate and non-intimate photographs of plaintiff. As a result of the foregoing post, defendant received and posted photographs sent to him by others using plaintiff's photographs in the commission of sexual acts. Plaintiff also learned that on May 8, 2017, defendant posted a link to a sexually explicit video of her, which he had uploaded to PornHub.com. Based on the foregoing, plaintiff began to experience panic attacks, depression, [*2]and anxiety. Plaintiff also struggled to focus, which affected her academically. Plaintiff treated with a psychiatrist once a week and continues to receive therapy. Plaintiff interposes three causes of action. The first cause of action is for the violation of New York City Administrative Code § 10-180, wherein plaintiff alleges that defendant disclosed intimate images of her without her consent and that such disclosure caused her damages. The second cause of action is for a violation of Civil Rights Law § 52-b, wherein plaintiff alleges that defendant disclosed intimate images of her without her consent and that such disclosure caused her damages. The third cause of action is for intentional infliction of emotional distress, wherein it is alleged that defendant disclosed intimate images of plaintiff without her consent with the intent to cause severe emotional distress, and that such conduct was so extreme in degree and so outrageous in character that it is beyond all possible bounds of decency.
On April 12, 2013, the Court (Wilson, J.) issued an order granting plaintiff's application for the entry of a default judgment and setting this matter down for inquest.
On April 1, 2024 plaintiff appeared for an inquest, which was held on the record.
At the inquest, plaintiff testified, in pertinent part, as follows. Plaintiff and defendant dated for some time. During their relationship, defendant took sexually explicit pictures and videos of her. It was agreed that defendant would not publish the pictures or videos, and that they were solely for defendant's private use. However, unbeknownst to plaintiff defendant uploaded two of the videos and several photos to websites on the internet and then shared links to the videos and photographs on other websites. Plaintiff discovered defendant's conduct when strangers contacted her and apprised her of the videos and photographs via her social media accounts. Plaintiff confronted defendant, who denied that he had shared the photographs or videos on the internet. As a result, plaintiff reported defendant's conduct to Seton Hall University, the school she and defendant attended, reported the same to the police, and sued defendant in New Jersey. Ultimately the police removed the videos and photographs from the internet, defendant was expelled from Seton Hall University, defendant was criminally tried and convicted for his conduct and had a civil judgment issued against him as a result of the same. Despite the foregoing, defendant continued to post explicit photographs and videos of plaintiff on the internet. Along with posting the videos and photographs on the internet, defendant also asked others to post photographs and videos of themselves engaging in sexual acts using the videos and photographs of plaintiff, which defendant then also posted on the internet. As a result of the foregoing, plaintiff became very depressed and anxious. Plaintiff developed a fear of leaving her home because she was afraid that people who had seen her videos and photographs on the internet would recognize her. Plaintiff developed general anxiety disorder, was and continues to be treated for the same.
Plaintiff also submitted documentary evidence. 
First plaintiff submitted a judgment from the Superior Court of New Jersey (Plaintiff's Exhibit 1), which the Court admitted into evidence [FN1]
. The judgment indicates that on January 25, [*3]2023, in a civil action brought by plaintiff against defendant, upon defendant's default, that court awarded plaintiff damages for medical expenses. Plaintiff was also awarded punitive damages totaling $100,000.
Plaintiff also submitted other documents (Plaintiff's Exhibits 3 and 5), namely screenshots from several websites, and which the Court admitted into evidence [FN2]
. Plaintiff's Exhibit 3 is a compilation of screenshots from CumonPrintedPics.com, a website. The screenshots are dated between November 3, 2015 and March 22, 2017, are under a thread labeled "Cute Slut Julia," and depict plaintiff fully clothed and either in underwear or a swimsuit. Within the thread, users shared photos of plaintiff, some of which contain pictures of the user's genitalia, and make comments such as "I want to smell Julia's sweet butthole and gag fuck her mouth as she cries." The documents also contain a link to a sexually explicit video of the plaintiff, which was posted on PornHub.com.
Plaintiff's Exhibit 5 is a compilation of screenshots from an online forum in 2020. The [*4]screenshots contain several pictures of plaintiff wearing underwear, a bikini, and/or regular clothing. Many of the photos contain comments such as "looking for tributes if [sic] of my ex," and "23 m looking for someone to jerk to my family and ex friends."
Plaintiff's Exhibit 7 is a report,[FN3]
which was admitted into evidence, from Howard Brenner (Brenner), a Licensed Clinical Social Worker, who states, the following. Brenner has treated plaintiff since 2019 and sees plaintiff once a week for 45 minutes. Brenner provides therapy to manage plaintiff's symptoms of anxiety, which stem from defendant's conduct, and to which he refers to as "revenge porn." When Brenner first treated plaintiff, she described feeling stigmatized by mutual friends because defendant denied his conduct. Plaintiff also became afraid to trust other people, since she never expected that defendant, with whom she shared a long-term relationship, would violate the trust they shared. Plaintiff is also afraid that people she may meet have seen the videos and photographs posted by defendant and fears the negative repercussions associated therewith. Defendant's conduct has caused several panic attacks, depression, and anxiety. Some of these episodes are completely debilitating. Brenner opines that plaintiff will require continued therapy to deal with continuing mental issues.
Standard of Review
It is well settled that "a defendant whose answer is stricken as a result of a default admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages" (Rokina Optical Co., Inc. v Camera King, Inc., 63 NY2d 728, 730 [1984]; McClelland v Climax Hosiery Mills, 252 NY 347, 351 [1930]; Arent Fox Kinter Plotkin & Kahn, PLLC v Gmbh, 297 AD2d 590, 590 [2d Dept 2002]). Moreover, "in a bench trial, no less than a jury trial, the resolution of credibility issues by the trier of fact and its determination of the weight to be accorded the evidence presented are entitled to great deference" (People v McCoy, 100 AD3d 1422, 1422 [4th Dept 2012]). Indeed, when findings of fact rest in large measure on considerations related to the credibility of witnesses, a trial court's determination on this issue is accorded great deference (Ning Xiang Liu v Al Ming Chen, 133 AD3d 644, 644 [2d Dept 2015]). Absent conclusions that cannot be supported by any [*5]fair interpretation of the evidence, a judgment rendered after a bench trial should not be disturbed (Saperstein v Lewenberg, 11 AD3d 289, 289 [1st Dept 2004]).
At an inquest, plaintiff bears the burden of establishing damages and/or injuries by the tender of admissible evidence (Abbas v Cole, 7 AD3d 649, 649 [2d Dept 2004]; Tamburello v Bensonhurst Car & Limo Serv., Inc., 305 AD2d 664, 665 [2d Dept 2003]; Godwins v Coggins, 280 AD2d 582, 582 [2d Dept 2001]; Jacobs v New York City Tr. Auth., 14 Misc 3d 130[A], *1 [App Term 2007]). Indeed, the admission of inadmissible evidence at an inquest is reversible error (Kotlyar v Strogov, 58 AD3d 693, 693-694 [2d Dept 2009] ["After an inquest on the issue of damages, the court awarded the plaintiff $50,000, without specifying whether the award was for pain and suffering, lost earnings, and/or medical expenses. Under the circumstances, and given the speculative nature of much of the plaintiff's proof at the inquest, and the court's error in admitting uncertified medical records into evidence, we remit the matter to the Supreme Court, Kings County, for a new inquest on the issue of damages" (internal citations omitted).]; Abbas at 649-650 ["Here, the defendant was denied this opportunity when the Supreme Court, inter alia, admitted the plaintiff's uncertified hospital records and unsworn medical reports into evidence over the defendant's objection. Further, the errors were not harmless. Thus, the defendant is entitled to a new inquest at which the plaintiff will be required to establish, through admissible evidence, his damages, if any" (internal citations omitted).]).
Notably,
[t]he sole issue to be determined at an inquest is the extent of damages sustained by the plaintiff, and the inquest court should not consider the question of whether the defendant caused the damages sustained by the plaintiff
(Castaldini v Walsh, 186 AD3d 1193, 1194 [2d Dept 2020]; see Gonzalez v Wu, 131 AD3d 1205, 1206 [2d Dept 2015]; Arluck v Brezinska, 180 AD3d 634, 635 [2d Dept 2020] ["As such, the sole issue to be determined at the inquest was the extent of the damages sustained by the plaintiff, and the Supreme Court should not have considered issues of liability."]; Rich-Haven Motor Sales, Inc. v Natl. Bank of New York City, 163 AD2d 288, 290 [2d Dept 1990] ["Turning first to the issue of causation, we note that the allegations contained in Rich—Haven's complaint, insofar as they pertain to the question of liability, must be deemed admitted in light of the defendant's default which resulted in an award of summary judgment against it."]). Indeed, it is reversible error for the court to require the plaintiff at an inquest to establish causation as to the damages alleged (Kouho v Trump Vil. Section 4, Inc., 93 AD3d 761, 763 [2d Dept 2012] ["the Supreme Court erred in considering the question of whether the plaintiff's accident was caused by Fazio—Trina."]).
Moreover, at an inquest, the defaulting defendant may nevertheless appear and present testimony and evidence, and may cross-examine the plaintiff's witnesses in order to mitigate damages (Tamburello v Bensonhurst Car & Limo Serv., Inc., 305 AD2d 664, 665 [2d Dept 2003]; Godwins v Coggins, 280 AD2d 582, 582 [2d Dept 2001]).
Applicable Law
In New York, there are several local and state laws which proscribe the nonconsensual publication of sexually explicit media. 
Pursuant to New York City, NY, Code § 10-180(b)(1), New York City, NY, Code § 10-180(b)(1),
[i]t is unlawful for a covered recipient to disclose an intimate image, without the depicted [*6]individual's consent, with the intent to cause economic, physical or substantial emotional harm to such depicted individual, where such depicted individual is or would be identifiable to another individual either from the intimate image or from the circumstances under which such image is disclosed.
Moreover, pursuant to New York City, NY, Code § 10-180(d)(1) and (2), New York City, NY, Code § 10-180(d)(1) and (2),
[a]ny individual who suffers harm from a violation of subdivision b of this section shall have a civil cause of action in any court of competent jurisdiction against the individual who violated that subdivision . . . The defendant may be held liable to the plaintiff for any or all of the following relief . . .(a) Compensatory and punitive damages; (b) Injunctive and declaratory relief; (c) Attorneys' fees and costs; and (d) Such other relief as a court may deem appropriate.
In addition, Civil Rights Law § 52-b(1)(a), (b), and (c), state that
[a]ny person depicted in a still or video image, regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated or published, or threatened to disseminate or publish, such still or video image, where such image . . . a. was taken when such person had a reasonable expectation that the image would remain private; and b. depicts (i) an unclothed or exposed intimate part of such person; or (ii) such person engaging in sexual conduct, as defined in subdivision ten of section 130.00 of the penal law, with another person; and c. was disseminated or published, or threatened to be disseminated or published, without the consent of such person.
With regard to damages, the foregoing statute authorizes a court and or a jury to "award injunctive relief, punitive damages, compensatory damages and reasonable court costs and attorney's fees" (Civil Rights Law § 52-b[2]). 
With respect to punitive damages, only when the actions of an alleged tortfeasor constitute gross recklessness or intentional, wanton, or malicious conduct aimed at the public, or when actions are activated by evil or other reprehensible motives, a party is entitled to punitive damages (Boykin v Mora, 274 AD2d 441, 442 [2d Dept 2000] ["While the defendant's flight from the scene of the accident might be considered reprehensible, such conduct did not proximately cause any of the plaintiff's injuries."]; Nooger v Jay-Dee Fast Delivery, 251 AD2d 307, 307 [2d Dept 1998]; Zabas v Kard, 194 AD2d 784, 784 [2d Dept 1993]; Gravitt v Newman, 114 AD2d 1000, 1002 [2d Dept 1985] ["Plaintiff has made no allegations beyond those of ordinary negligence or malpractice as would constitute the basis for an award of punitive damages."]). Punitive damages are also appropriate when a defendant's conduct is so flagrant that it transcends mere carelessness (Zabas at 784), or when it contains elements of spite or malice (Wilson v The City of New York, 7 AD3d 266, 267 [1st Dept 2004]). Lastly, punitive damages are also warranted when the conduct alleged involves "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, fraudulent or evil motive, or conscious act in willful and wanton disregard of another's rights" (Uilico Casualty Company v Wilson, [*7]Elser, Moskowitz, Edelman & Dicker, 56 AD3d 1, 13 [1st Dept 2008]).
It is well settled that in an action alleging physical and/or psychic injuries, the measure of damages is adequate monetary compensation for conscious pain and suffering (NY Pattern Jury Instr.—Civil 2:280 ["If you decide that defendant is liable, plaintiff is entitled to recover a sum of money which will justly and fairly compensate (him, her) for any injury, disability and conscious pain and suffering to date caused by defendant. . . . Conscious pain and suffering means pain and suffering of which there was some level of awareness by plaintiff."]; Tate by McMahon v Colabello, 58 NY2d 84, 87-88 [1983] ["Moreover, appropriately, this was followed by an instruction during the court's charge to the jury that the ultimate measure of damages was to be a sum of money which will justly and fairly compensate the plaintiff" (internal quotation marks omitted).]; see Kehrli v City of Utica, 105 AD2d 1085, 1085 [4th Dept 1984]; Kane v New York, N.H. & H.R. Co., 132 NY 160, 164-165 [1892]).
In an inquest involving pain and suffering damages, it is helpful to employ the same analysis a court is asked to undertake when a party seeks to set aside a money damages verdict pursuant to CPLR § 5501(c), as "excessive or inadequate [because] it deviates materially from what would be reasonable compensation." Like a determination of whether a verdict is appropriate, which requires a comparison of the verdict at issue "with relevant precedent" (Donlon v City of New York, 284 AD2d 13, 16 [1st Dept 2001]), the same is true at an inquest involving pain and suffering damages, where the court is called upon to prescribe adequate compensation. To that end, employing the same analysis in a case where the damages award is sought to be altered, "analogous cases will be useful as benchmarks" (id. at 16). While it is understood that "such a method cannot, due to the inherently subjective nature of non-economic awards, be expected to produce mathematically precise results, much less a per diem pain and suffering rate" (id. at 15), it is nevertheless the only method to arrive at an appropriate measure of damages.
Discussion
Plaintiff has credibly established entitlement to damages for defendants' conduct, namely the nonconsensual disclosure of videos and photographs depicting plaintiff engaging in sexual acts.
Significantly, plaintiff's testimony, corroborated by the documentary evidence establishes that defendant, without plaintiff's consent, published sexually explicit photos and videos of her engaging in sexual acts and in various stages of undress. Furthermore, defendant not only widely shared the foregoing videos and photographs on the internet, but created sexually explicit captions, which he posted along with the pictures and videos, and he urged others to use plaintiff's videos and pictures to pleasure themselves and post pictures of such acts. The record also establishes that defendant continued to engage in the foregoing conduct even after he was criminally tried and convicted and after a civil judgment for his conduct was entered against him. Lastly, with regard to damages, plaintiff's testimony and Brenner's report establish that plaintiff has been afflicted with stress, depression, anxiety and panic attacks, which are expected to continue.
Here, plaintiff's request for an award of past pain and suffering damages in the sum of $500,000 and an award of punitive damages in the sum of $2,500,000 is granted. 
While the Court was unable to find any published jury and/or bench trial awards for the causes of action asserted in this action, plaintiff provided the Court with relevant awards in other cases that support the damages sought (M.H. v E.T., et al., Sup Ct, New York County, Index No. [*8]161144/2020, NY St Cts Elec Filing [NYSCEF] Doc No. 1 and 30 [Action where defendant shared sexually explicit and intimate photos of the plaintiff with others via telephone. Plaintiff sustained severe emotional disttress. After an inquest, the Court awarded plaintiff $350,000 for pain and suffering and $750,000 for punitive damages.]; Cooper v Broems, Sup Ct, New York County, Index No. 153384/18, NY St Cts Elec Filing [NYSCEF] Doc No. 1 and 185 [Action where defendant Broems published sexually explicit photos and videos of the plaintiff on websites. Plaintiff sustained emotional damages and the jury awarded her $5 million for past pain and suffering, $5 million for future pain and suffering, and $15,000,000 for punitive damages.]).
Accordingly, here the damages sought are well within the range representing fair and just compensation for pain and suffering. Moreover, here, defendant not only published plaintiff's intimate videos and photographs prior to being criminally convicted and having a civil judgment lodged against him, but he did so thereafter. Thus, here it is clear that defendant's conduct was intentional and deliberate, motivated by evil and with wanton disregard of plaintiff's rights (Uilico Casualty Company at 13). Accordingly, punitive damages are warranted and should be significantly more than the sums awarded in M.H. It is hereby
ORDERED that plaintiff is granted a judgment in the amount of $500,000 for past and future pain and suffering and $2,500,000 for punitive damages, plus interest, costs and disbursements. It is further
ORDERED that plaintiff submit a judgment to the Clerk of the Court, within 30 days hereof. It is further
ORDERED that the transcript of this inquest as well as all exhibits be sealed [FN4]
. It is [*9]further
ORDERED that plaintiff serve a copy of this Decision and Order with Notice of Entry upon defendant within 30 days hereof.
This constitutes this Court's Decision and Order.
Dated : April 19, 2024
Bronx, New York
HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1:It is well settled that a court can take judicial notice of any and all undisputed court records and files (Khatibi v Weill, 8 AD3d 485, 485 (2d Dept 2004). Indeed, this rule includes the court's own court files and extends to files related to proceedings in other courts (MJD Construction, Inc. v Woodstock Lawn & Home Maintenance, 299 AD2d 459, 459 [2d Dept 2002]; Ptasznick v Schultz, 247 AD2d 197, 199 [2d Dept 1998]; Warner v Board of Education of the City of New York, 14 AD2d 300, n1 [1st Dept 1961]). When a court chooses to take judicial notice of records, it obviates a foundation for purposes of admitting said documents into evidence (Bernasconi v Aeon, LLC, 105 AD3d 1167, 1169 [3d Dept 2013]; Lagano v Soule, 86 AD3d 665, 667, n 5 [3d Dept 2011]; Secretary of Dept. of Hous. and Urban Dev. v Torres, 2 Misc 3d 53, 55 [App Term 2003]). Here, the Court took judicial notice of the judgment from the Superior Court of New Jersey, which bore a certification.

Footnote 2:With respect "to screenshots of text messages and similar digital photographs, the proper foundation may be established through testimony that the photograph accurately represented the subject matter depicted" (People v Christie, 224 AD3d 1097, 1101 [3d Dept 2024] [internal quotation marks omitted]; see People v Rodriguez, 38 NY3d 151, 155 [2022] ["This Court recently held that for digital photographs, like traditional photographs, the proper foundation may be established through testimony that the photograph accurately represents the subject matter depicted" (internal quotation marks omitted).]). Indeed, in People v Price (29 NY3d 472 [2017]), while the court declined to admit a photograph obtained from the internet into evidence, it stated that the lynchpin to admissibility of any piece of evidence was its authentication (id. 476). Further, the Court noted that like any photograph, the internet photograph at issue, was admissible if there was testimony that it accurately represented the subject matter therein, a rule that applied equally to new technologies such as the photo before it (id. at 477). Here, plaintiff testified that the documents fairly and accurately depicted the contents of the websites depicted in the documents and that each page represented a screenshot of the content on the respective website. Thus, the documents were admitted into evidence. 

Footnote 3:22 NYCRR § 202.46(a) states that "In an inquest to ascertain damages upon a default, pursuant to CPLR 3215, if the defaulting party fails to appear in person or by representative, the party entitled to judgment, whether a plaintiff, third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim, may be permitted to submit, in addition to the proof required by CPLR 3215(e), properly executed affidavits as proof of damage." Moreover, CPLR § 2106 states, in pertinent part, that "[t]he statement of any person wherever made, subscribed and affirmed by that person to be true under the penalties of perjury, may be used in an action in New York in lieu of and with the same force and effect as an affidavit." Here, Brenner's report is attached to a certification by Brenner, which incorporate his report by reference, stating that it is accurate and complete. Brenner's certifies the foregoing under penalty of perjury. Accordingly, Brenner's report was admitted into evidence.

Footnote 4:22 NYCRR 216.1(a) states that "[e]xcept where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard." Since in legal proceedings, confidentiality is the exception, before the court seals the records of a proceeding, it must make an independent determination that there is good cause to seal the records (Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 502 [2d Dept 2007]; In re Will of Hofmann, 284 AD2d 92, 93 [1st Dept 2001]). Since the task involves weighing the public's interest in accessing information with the interest of the parties in keeping the proceedings confidential, a finding of good cause "presupposes that public access to the documents at issue will likely result in harm to a compelling interest of the" proponent of an order sealing the records (Mancheski at 502; see Liapakis v Sullivan, 290 AD2d 393, 394 [1st Dept 2002]) and that there no viable alternative to sealing the records (Mancheski at 502; Liapakis at 394). Ultimately, however, good cause is merely the prudent exercise of the court's discretion (id. at 502). Here, to the extent that the other records in the Court's file do not contain any information which identifies plaintiff, the sealing of the transcript and exhibits proffered at the hearing, which disclose plaintiff's identity, must be sealed. Indeed, where as here, plaintiff was the victim of the nonconsensual publication of pornographic material, there is no conceivable right by the public to know who she is or to view the published pornographic material. By contrast, the disclosure of such material or her identity to the public would essentially subject plaintiff to the very harm which precipitated this action in the first place. Accordingly, her interest in confidentiality outweighs any right by the public to view the transcript and the evidence proffered at the inquest.